Voto particular disidente emitido por la
Juez Asociada Señora Rodríguez Rodríguez.
On the other hand, there is an immediate legal injury or legal—what could be a legal injury, and that’s the voice of these children. There are some 40,000 children in California, according to the Red Brief, that live with same-sex parents, and they want their parents to have foil recognition and foil status. The voice of those children is important in this case, don’t you think?(1)
*396 Ante la moción de reconsideración presentada por la peticionaria, reafirmo mi postura desde la disidencia ante la denegatoria de una mayoría del Tribunal de reconocerle jurídicamente a AAR su relación de amor y afecto maternal hacia su hija JMAV. Aun así, aprovecho estas páginas para hacer otras expresiones, pues los folios de nuestros escritos jamás serán suficientes para denunciar el proceder errado de esta Curia ni la injusticia que aquí se comete.
En el caso de autos todos los jueces y juezas de este Tribunal nos referimos a la peticionaria y a su familia mediante las iniciales de sus nombres por motivos de proteger la identidad de ellas y la confidencialidad de los procesos. Sin embargo, detrás de esas iniciales hay sujetos, hay seres humanos que sufren y padecen los resultados de nuestras decisiones. A pesar de que este Tribunal tuvo ante sí múltiples y variados enfoques o mecanismos hábiles en Derecho para facultar la adopción solicitada,(2) la mayoría del Foro enfocó su atención en argumentos jurídicos y morales que abstrajeron la subjetividad y humanismo de las personas a quienes iba dirigida nuestra decisión. Esto, a su vez, en contravención del mejor interés de la menor JMAV según quedó evidenciado en el propio expediente, mas no mediante informes o estudios ajenos al expediente mismo.
Si bien es cierto que nuestros pronunciamientos deben “explicit [ar] los fundamentos jurídicos” de las decisiones *397 emitidas,(3) igual de cierto es que nuestra función como último foro de justicia en el País no debe ejercerse en aislamiento de las personas que confían sus esperanzas en el expediente judicial con que trabajamos. Por ello, no debemos soslayar que “[e]l expediente judicial es una permanente conexión humana. E ingresa en la historia de la persona, porque ésta es su protagonista”. N.A. Cipriano, La humanidad del expediente judicial y otros ensayos jurídicos, Buenos Aires, Ediciones Depalma, 1976, págs. 26-27.
El expediente judicial de un caso ante nuestra consideración es la herramienta base de nuestra función adjudicadora, pero las personas cuyos problemas están depositados en él son el motor impulsor de nuestra gestión judicial. En palabras de Néstor Amílcar Cipriano, debemos ser conscientes de que
[e]l expediente judicial vive pleno de humanidad. Inquietudes, ansiedades, esperanzas laten sin cesar en cada una de sus hojas. Es el trámite cierto hacia una decisión. Una persona, una familia, un grupo pueden estar pendientes del desarrollo, que conduce a un resultado. Momentos tensionales dominan los ánimos de quienes esperan. Naturalmente, mucho dependerá de la importancia del problema juzgado. Pero, por mínimo que fuere, nunca se ausentarán las humanas inquietudes.
La carátula, el nombre, el número catalogador, la clase de asunto, los escritos, las decisiones parciales, la sentencia final, son imanes dominantes de la conformación vivencial.
El expediente judicial es el corpus que recibe ansiedades, esperanzas, inquietudes. Su conformación física —que alguna vez puede aparentar frialdades— no anula ni desvanece su verdadero contenido. Al contrario, vive rezumante de humanidad, con la esencia puesta en la meta de la justicia. Cipriano, op. cit, págs. 19 y 27.
El valor del expediente judicial de un caso no debe minimizarse; mucho menos debe desviarse la atención hacia propósitos exógenos que no disponen de la controversia, *398 como los argumentos extrajurídicos y morales de la mayoría de este Foro en esta controversia. Frente al expediente judicial el juez debe conservar la humildad, poseer virtud, no juzgar con arbitrariedad, ser compasivo, proteger la dignidad humana y buscar la verdad y la equidad más allá de las concepciones morales y subjetivas que pueda tener. Véanse: M. de Cervantes Saavedra, Don Quijote de la Mancha II, Ed. del IV Centenario, Madrid, Real Academia Española, 2004, Cap. XLII, págs. 868-870; Jaime B. Fuster Berlingeri, La solidaridad en el proceso judicial, 41 Rev. Der. Pur. 1 (2002).(4) Ante todo, el juez debe ser consciente de las peripecias que cargan las personas dentro de un expediente y debe vivirse el caso. Cipriano, op. cit, pág. 26. En ocasiones, según reflejado en este caso por medio de la mayoría del Tribunal, a los jueces se les olvida esto último y se presentan con una actitud flemática e impasible ante la humanización del expediente.
Además de lo anterior, coincido con las expresiones del Juez Presidente Señor Hernández Denton en su voto disidente en cuanto a que debemos ser prudentes en este caso y posponer la resolución de la moción de reconsideración hasta tanto el Tribunal Supremo de Estados Unidos resuelva los casos United States v. Windsor, Docket No. 12-307, y Hollingsworth v. Perry, Docket No. 12-144. No hay duda de que nuestra opinión se da a destiempo ante la inminencia de unos dictámenes “que podrían alterar muy pronto el escenario constitucional y que, dependiendo del resultado, podrían requerir que el Tribunal Supremo de Puerto Rico tenga que revisar este asunto”. H. Meléndez Juarbe, Ex Parte AAR y el TSEU, en derechoalderecho, *399 http://derechoalderecho.org/2013/03/27/ex-parte-aar-y-eltseu/ (última visita, 10 de abril de 2013). Es ante ese trasfondo que la Procuradora General en su moción en respuesta a la moción de reconsideración presentada por AAR, señala que el máximo foro federal tiene ante sí asuntos donde está en controversia el escrutinio aplicable a estatutos que contienen clasificaciones por orientación sexual en su aplicación a parejas del mismo sexo, tal cual el caso ante nuestra consideración. Oficina de la Procuradora General, Moción Informativa en Respuesta a Moción de Reconsideración y Solicitud de Autorización y Término para Presentar Postura del Estado en Relación a la Moción de Reconsideración de la Parte Peticionaria, 18 de marzo de 2013, pág. 3.(5)
En la moción mencionada, el Estado libre Asociado de Puerto Rico, por representación de la Oficina de la Procuradora General, nos indica que en su comparecencia mediante alegato en octubre de 2009 “reconoció que el Artículo 138 contiene una clasificación por preferencia sexual”. (Énfasis en el original). íd., pág. 1. Sin embargo, en aquella ocasión el Estado invocó las reglas de autolimitación judicial para no profundizar en el tema, además que descansó en señalar que no se configura un discrimen por razón de sexo, género u orientación sexual porque la prohibición del Artículo 138 del Código Civil, 31 LPRA see. 539, le aplica por igual a familias compuestas por dos hombres como por dos mujeres. Alegato de la Procuradora General, 30 de octubre de 2009, pág. 25.
Tras transcurrir poco más de tres años desde aquella comparecencia, la Oficina de la Procuradora General ahora señala correctamente que “el panorama del derecho constitucional a nivel federal sobre discrimen por orientación sexual ha cambiado y ello amerita revaluar los plantéa *400 mientos de este caso”. Procuradora General, Moción informativa en respuesta a moción de reconsideración, pág. 2. Es precisamente basado en los cambios que ha sufrido el derecho constitucional a la igual protección de las leyes y la protección contra el discrimen por razón de orientación sexual, que la Procuradora General ahora nos solicita que le concedamos un término para presentar de forma más extensiva un alegato o comparecencia suplementaria para expresarse sobre el análisis constitucional aplicable a clasificaciones basadas en orientación sexual.
En la Resolución que hoy emite este Tribunal se rechaza la solicitud de la Oficina de la Procuradora General según el supuesto de falta de jurisdicción porque el escrito se presentó fuera del término de diez días laborables que provee la Regla 45 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. La Regla 45 de nuestro Reglamento (sobre mociones de reconsideración) establece un término jurisdiccional de diez días para presentar una moción de reconsideración y, además, señala que se “denegará de plano cualquier solicitud de prórroga para presentar una moción de reconsideración o un escrito en apoyo de ésta”. Id. Yerra la mayoría de este Foro al rechazar la petición, puesto que el escrito de la Procuradora General no es una moción de reconsideración ni solicita una prórroga para presentar moción en apoyo a una moción de reconsideración. Su escrito, aunque manifiesta su apoyo a la moción de reconsideración presentada por AAR, trata sobre la solicitud de un término para presentar suplementariamente la postura del Estado en torno al escrutinio aplicable en controversias de discrimen por razón de orientación sexual.
La petición de la Procuradora General debe catalogarse como una moción para expresarse a favor o en contra de una moción para algún remedio, por lo que tenía un término de presentación de diez días desde la notificación de la moción de reconsideración presentada por AAR. Véase Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B R. 31. Debido a que la moción de la Procuradora General se *401 presentó dentro de los diez días de presentada la moción de reconsideración de AAR, conservamos jurisdicción sobre tal escrito.
En la alternativa de aplicar la mencionada Regla 31, la moción de la Procuradora General debe considerarse como una comparecencia especial o sui géneris (única en su clase) para lo que el Reglamento del Tribunal no tiene previsto un término o procedimiento particular. En tal circunstancia, por vía de la Regla 50 nuestro Reglamento faculta a encauzar el trámite de lo solicitado según “los mejores intereses de todas las partes [...] para así lograr el más justo y eficiente despacho del caso o del asunto de que se trate”. Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, R. 50. Salvo quien se persigne ante una justicia tuca, lo más justo y razonable para atender la comparecencia de la Procuradora General llevaría a un juez a facultar lo solicitado.
Más aún, cuando quien acude es el Estado Libre Asociado de Puerto Rico para expresarse en torno a un asunto de alto interés público, no debemos tomar a la ligera ni superfinamente su comparecencia. Así como la mayoría del Tribunal le dio un peso significativo a la comparecencia de 2009 de la Procuradora General para definir el interés legítimo del Artículo 138 del Código Civil de no permitir que una persona adopte al hijo de su pareja del mismo sexo, cuando la propia Ley Núm. 8 de 19 de enero de 1995 no lo definía, así también esa mayoría debe dar el mismo trato sin distinción del tiempo transcurrido ni la política pública actual de erradicación del discrimen contra un ser humano en cualquiera de sus modalidades.(6) Véase Procuradora General, Moción Informativa en Respuesta a Moción de Reconsideración, pág. 2 (donde se aborda sobre la política pública actual del Estado en materia de discrímenes y su *402 interés en atemperar el ordenamiento jurídico al mandato de igualdad dispuesto en nuestra Constitución).
Previo a concluir, conviene puntualizar que el cambio de política pública que señala la Procuradora General en su escrito no constituye “una desviación de su deber de defender la constitucionalidad del Art. 138 del Código Civil [...]” AAR, Ex parte I, 188 DPR 380, 386 (2013). La Sección 4 del Artículo IV de la Constitución de Puerto Rico impone a la Rama Ejecutiva la función de cumplir y hacer cumplir las leyes, mas no el deber de defender la constitucionalidad de éstas ante los tribunales.(7) Por eso nada impide que esa rama de gobierno desista de defender la constitucionalidad de una ley cuando, en su prerrogativa de interpretar la Constitución, concluye que la ley en cuestión es inconstitucional.(8) En vista de que la tarea de un funcionario en el cargo de Procuradora General es defender la Constitución antes que una ley inferior que esté en contravención de la primera, y de que la determinación de validez constitucional del Artículo 138 de este Poro aún no es final y firme, la Oficina de la Procuradora General no se desvía en ejercer la función a la que juró: de defender nuestra Carta Magna contra cualquier ley que promueva el discrimen, atente *403 contra la dignidad humana y los demás derechos allí consagrados.
Además, reconocer que un dictamen de un tribunal es erróneo, aunque ello sea en un caso en que inicialmente se ha prevalecido, es cónsono con la responsabilidad de esa Oficina para con este Tribunal. Sobre esta práctica de parte de la Oficina del Procurador General, el profesor Archibald Cox, Procurador General de Estados Unidos (1961-1965), señala lo siguiente:
It tests the strength of our belief that the office has a peculiar responsibility to the Court. It affects the way all our other cases are presented. If we are willing to take a somewhat disinterested and wholly candid position even when it means surrendering a victory, then all our other cases will be presented with a greater degree of restraint, with a greater degree of candor, and with a longer view, perhaps, than otherwise. Citado en Lincoln Caplan, The Tenth Justice: The Solicitor General and the Rule of Law, Nueva York, Knopf, 1987, pág. 10.
Y es que, quienes hemos ceñido ese sombrero sabemos “que[,] habida cuenta de la confianza que el pueblo deposita en los funcionarios encargados de velar por que se cumplan las leyes, [nosotros] tenemos una obligación moral de actuar afirmativamente cuando lo contrario conllevaría un extravío de la justicia”. A. Rodríguez Rodríguez, Abogando ante el Tribunal Supremo: deberes y obligaciones de la Oficina del Procurador General, 62 Rev. Jur. UPR 87, 93-94 (1993). El Estado Libre Asociado de Puerto Rico gana en cada ocasión en que se hace justicia a sus ciudadanos en los tribunales y se les protege y defiende del discrimen. No podría ser de otra forma.
En atención a lo antes mencionado, pospondría la consideración de la moción de reconsideración presentada por AAR. En vista de que la mayoría no toma ese curso de acción, disiento nuevamente del proceder mayoritario y reafirmo mis expresiones anteriores en ARR, Ex Parte, 187 DPR 835, 1000 (2013) (Rodríguez Rodríguez, J., Op. disidente).

 Hollingsworth v. Perry, Docket No. 12-144 (Anthony M. Kennedy, J., Vista Oral), pág. 21, http://www.supremecourt.gov/ oral_arguments/argument_transcripts/ 12-144.pdf.

 De la variedad de herramientas jurídicas para atender esta controversia, la disidencia proveyó tres mecanismos o teorías separadas que también fueron ignoradas por la mayoría del Tribunal. Véase AAR, Ex parte, 187 DPR 835, 963 (2013), opinión disidente del Juez Presidente Señor Hernández Denton (aplicación de un escrutinio estricto para decretar la inconstitucionalidad del Artículo 138 del Código Civil de Puerto Rico); opinión disidente de la Jueza Asociada Señora Fiol Matta (aplicación de la figura del second parent adoption)', opinión disidente de la Juez Asociada Señora Rodríguez Rodríguez (incorporación de la figura del second parent adoption y, en la alternativa, la aplicación de un escrutinio intermedio para decretar la inconstitucionalidad del Artículo 138 del Código Civil); opinión disidente del Juez Asociado Señor Estrella Martínez (aplicación de la figura del second parent adoption).
Véanse, además, los distintos fundamentos jurídicos para facultar la adopción provistos por el Juez Presidente Señor Hernández Denton en su voto disidente sobre la denegatoria de la mayoría del Tribunal a reconsiderar su decisión en AAR, Ex parte I, 188 DPR 380 (2013).

 É. Pontánez Torres, Antesala: observando a los jueces y juezas como operadores del Derecho, 80 Rev. Jur. UPR 1, 3 (2011).

 Citamos del escrito del Juez Asociádo Señor Fuster Berlingeri:
“El juez ha de ser sensible particularmente a la necesidad de conjurar los discrímenes que históricamente han sufrido las minorías, los trabajadores, los encarcelados, los acusados, las mujeres, los indigentes, los emigrantes y otros desfavorecidos y desamparados. Ha de estar consciente de que el reto mayor de la justicia es el de proteger la dignidad humana y procurar el desarrollo pleno precisamente de aquéllos que más lo necesitan, de los desvalidos, y de aquéllos que han sufrido cualquier forma de opresión o injusticia”. (Enfasis suplido). J.B. Fuster Berlingeri, La solidaridad en el proceso judicial, 41 Rev. Der. UPR 1, 17 (2002).

 Con la posposición de la resolución de la moción de reconsideración ante nosotros hasta tanto el Tribunal Supremo de Estados Unidos resuelva dos casos ante sí que ineludiblemente incidirán sobre nuestro pronunciamiento en el caso de autos, precisamente se busca paralizar procesalmente el efecto de una decisión con tal de reducir el espectro de especulación que gravita a su alrededor.

 No se justifica cuestionar la actuación o motivaciones de la Procuradora General y atribuirle a ésta que su proceder no es más que un mero “artificio” que persigue “otros propósitos”, sin identificar de qué propósitos se habla.

 La Regla 21.3 de Procedimiento Civil faculta al Estado Libre Asociado de Puerto Rico a intervenir en un pleito en que se cuestione la constitucionalidad de una ley. No obstante, su intervención no es obligatoria, salvo que el tribunal lo ordene. Además, la regla no le impone al Estado ningún deber ministerial de defender la constitucionalidad de la ley impugnada. 32 LPRA Ap. V R. 21.3.

 Ese mismo proceder asumió el Presidente de Estados Unidos y el Departamento de Justica federal, por voz de su Secretario E.H. Holder, Jr., al remitirle una carta a John A. Boehner, “Speaker” de la Cámara de Representantes de Estados Unidos, en donde se informó que la Rama Ejecutiva federal desistiría de defender la constitucionalidad de la Sección 3 del Defense of Marriage Act (DOMA) ante los tribunales. E.H. Holder, Jr., Letter from, the Attorney General to Congress on Litigation Involving the Defense of Marriage Act, disponible en http://www.justice.gov/opa/ pr/2011/February/ll-ag-223.html (“ ‘[Different cases can raise very different issues with respect to statutes of doubtful constitutional validity’, and thus there are ‘a variety of factors that bear on whether the Department will defend the constitutionality of a statute’ [...] This is the rare case where the proper course is to forgo the defense of this statute. Moreover, the Department has declined to defend a statute ‘in cases in which it is manifest that the President has concluded that the statute is unconstitutional’, as is the case here”).